# No. 25-3436

IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

**CONCERNED JEWISH PARENTS AND TEACHERS
OF LOS ANGELES, et al.,**
*Plaintiffs-Appellants,*

*v.*

**LIBERATED ETHNIC STUDIES MODEL
CURRICULUM CONSORTIUM, et al.,**
*Defendants-Appellees.*

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA
FERNANDO M. OLGUIN, DISTRICT JUDGE • CASE NO. 2:22-CV-03243-FMO-E

---

# APPELLANTS' OPENING BRIEF

---

**HORVITZ & LEVY** LLP
JEREMY B. ROSEN
REBECCA A. MARCYES
505 SANSOME STREET, SUITE 1550
SAN FRANCISCO, CALIFORNIA 94111-3149
(415) 462-5600

**HORVITZ & LEVY** LLP
JOHN F. QUERIO
3601 WEST OLIVE AVENUE, 8TH FLOOR
BURBANK, CALIFORNIA 91505-4681
(818) 995-0800

**THE DEBORAH PROJECT**
LORI LOWENTHAL MARCUS
JEROME M. MARCUS
P.O. BOX 212
MERION STATION, PENNSYLVANIA 19066-0212
(610) 664-1184

**JUDICIAL WATCH, INC.**
ROBERT PATRICK STICHT
425 THIRD STREET S.W., SUITE 800
WASHINGTON, D.C. 20024-3232
(202) 646-5172

ATTORNEYS FOR PLAINTIFFS AND APPELLANTS
**CONCERNED JEWISH PARENTS AND TEACHERS OF LOS ANGELES,
DANIEL ELI, LINDSEY KOHN, AMY LESERMAN, AND DANNA ROSENTHAL**

TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...............................................................iv

INTRODUCTION .......................................................................... 1

JURISDICTIONAL STATEMENT ................................................. 2

STATEMENT OF ISSUES PRESENTED ...................................... 3

STATEMENT OF THE CASE ...................................................... 4

    A.   Concerned Jewish Parents and Teachers of Los
        Angeles sue the public school district, a teachers union,
        a curriculum developer, and three individuals, alleging
        violations of statutory and constitutional rights under
        federal and state law.............................................................. 4

    B.   Defendants move to dismiss.  The non-LAUSD
        Defendants also move to strike Plaintiffs' state-law
        claims under California's anti-SLAPP statute. ...................... 5

    C.   The non-LAUSD Defendants move for attorney's fees
        under California's anti-SLAPP statute.  Plaintiffs
        oppose the motion.................................................................. 6

    D.   The district court grants the fee motions and awards
        substantial attorney's fees to the non-LAUSD
        Defendants covering work related to both state and
        federal claims and a multiplier. ............................................ 7

SUMMARY OF THE ARGUMENT .............................................. 8

ARGUMENT ............................................................................... 10

I.    If the district court's order granting the non-LAUSD
    Defendants' anti-SLAPP motions is reversed, the fee award
    must be reversed along with it. ....................................................... 10

i

II. Even if the judgment dismissing Plaintiffs' claims is affirmed, the fee order should nevertheless be reversed because there was no basis to apply the anti-SLAPP statute here. ................................................................. 11

    A. The non-LAUSD Defendants must show entitlement to relief under the anti-SLAPP statute, not simply Rule 12(b)(6). .................................................................. 11

    B. The anti-SLAPP statute categorically does not apply to public interest lawsuits like this one. ................................... 12

    C. Even if this lawsuit does not fall within the public interest exception, the anti-SLAPP statute still does not apply because the injury-producing conduct that forms the basis of Plaintiffs' claims is not protected petitioning activity. ................................................................. 16

        1. As a threshold matter, the non-LAUSD Defendants must establish that Plaintiffs' claims are based on protected petitioning activity as defined by the anti-SLAPP statute. ............................. 16

        2. Plaintiffs' state-law claims are based on conduct by the non-LAUSD Defendants that violates California civil rights law, not on any speech or petitioning activity by those Defendants. .................... 18

    D. Even if the non-LAUSD Defendants properly prevailed on their anti-SLAPP motions, the district court's application of a fee multiplier was an abuse of discretion. ................................................................. 22

        1. California law governs the attorney's fees analysis in anti-SLAPP cases. ....................................... 22

        2. The district court abused its discretion in applying a multiplier to enhance the Consortium Defendants' attorney's fees award. ............................. 24

III.  In the alternative, this Court could grant initial en banc hearing to revisit whether California's anti-SLAPP statute applies in federal court and hold that it does not. .......................... 30

    A.  Anti-SLAPP practice in federal court has diverged drastically from the California Legislature's design in drafting the anti-SLAPP statute. .......................... 30

    B.  The anti-SLAPP statute does not apply in federal court. ......................................................... 34

        1.  California's anti-SLAPP statute is procedural. ........... 34

        2.  The anti-SLAPP statute answers questions already accounted for by the Federal Rules of Civil Procedure. ............................................... 36

        3.  This Court should grant initial hearing en banc to resolve internal disagreement and join its sister circuits in holding that state anti-SLAPP statutes cannot be applied in federal court. ............................... 40

CONCLUSION ......................................................... 43

STATEMENT OF RELATED CASES ....................................... 44

Form 8. Certificate of Compliance for Briefs ......................... 45

iii

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Abbas v. Foreign Pol'y Grp., LLC,*
  783 F.3d 1328 (D.C. Cir. 2015) .......................................... 37, 38, 39, 41

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ................................................................... 38

*Baral v. Schnitt,*
  1 Cal.5th 376 (2016) ......................................................... 16, 17, 31

*Barry v. State Bar of Cal.,*
  2 Cal.5th 318 (2017) .................................................................. 32

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) .............................................................. 37, 38

*Bevis v. Terrace View Partners, LP,*
  33 Cal.App.5th 230 (2019) .......................................................... 10

*Carbone v. Cable News Network, Inc.,*
  910 F.3d 1345 (11th Cir. 2018) ............................................... 39, 40, 41

*Club Members for an Honest Election v. Sierra Club,*
  45 Cal.4th 309 (2008) ......................................................... 12, 13, 15

*Cooper v. Tokyo Elec. Power Co. Holdings,*
  960 F.3d 549 (9th Cir. 2020) ........................................................ 34

*Erie R. Co. v. Tompkins,*
  304 U.S. 64 (1938) ............................................................. 31, 34, 35

*FilmOn.com Inc. v. DoubleVerify Inc.,*
  7 Cal.5th 133 (2019) .................................................................. 16

*Garcetti v. Ceballos,*
  547 U.S. 410 (2006) ................................................................... 18

iv

*Gopher Media LLC v. Melone,*
  129 F.4th 1196 (9th Cir. 2025) .................................................. 2, 9, 42

*Graham v. DaimlerChrysler Corp.,*
  34 Cal.4th 553 (2004) .......................................................... 22, 23

*Graham-Sult v. Clainos,*
  756 F.3d 724 (9th Cir. 2014) .................................................. 10, 22

*Guam Soc'y of Obstetricians & Gynecologists v. Ada,*
  100 F.3d 691 (9th Cir. 1996) .......................................... 26, 27, 28, 29

*Hilton v. Hallmark Cards,*
  599 F.3d 894 (9th Cir. 2010) ...................................................... 11

*In re Cal. Pizza Kitchen Data Breach Litig.,*
  129 F.4th 667 (9th Cir. 2025) .................................................... 22

*In re Cnty. of Orange,*
  784 F.3d 520 (9th Cir. 2015) ...................................................... 34

*In re Gawker Media LLC,*
  571 B.R. 612 (Bankr. S.D.N.Y. 2017) .......................................... 41

*In re Johnson & Johnson Talcum Powder Prods. Mktg.,*
  *Sales Practices, & Prods. Liab. Litig.,*
  553 F.Supp.3d 211 (D.N.J. 2021) .............................................. 41

*Intercon Sols., Inc. v. Basel Action Network,*
  791 F.3d 729 (7th Cir. 2015) ...................................................... 41

*Johnson v. Poway Unified Sch. Dist.,*
  658 F.3d 954 (9th Cir. 2011) ...................................................... 18

*Ketchum v. Moses,*
  24 Cal.4th 1122 (2001) ...................................................... 23, 24, 26

*Klocke v. Watson,*
  936 F.3d 240 (5th Cir. 2019) ...................................................... 42

*La Liberte v. Reid,*
  966 F.3d 79 (2d Cir. 2020) ............................................ 9, 11, 37, 38, 41

*LaNasa v. Stiene,*
    731 F.Supp.3d 403 (E.D.N.Y. 2024) ..................................................... 41

*Los Lobos Renewable Power, LLC v. Americulture, Inc,*
    885 F.3d 659 (10th Cir. 2018) ............................................................ 42

*Makaeff v. Trump Univ., LLC,*
    715 F.3d 254 (9th Cir. 2013) ................................................ 34, 35, 41

*Makaeff v. Trump Univ., LLC,*
    736 F.3d 1180 (9th Cir. 2013) ............................................................ 40

*Martinez v. ZoomInfo Techs., Inc.,*
    82 F.4th 785 (9th Cir. 2023) .............................................................. 40

*Med. Marijuana, Inc. v. ProjectCBD.com,*
    46 Cal.App.5th 869 (2020) ................................................................. 31

*Metabolife Int'l, Inc. v. Wornick,*
    264 F.3d 832 (9th Cir. 2001) ............................................................. 31

*N. Cal. Carpenters Reg'l Council v. Warmington Hercules Assocs.,*
    124 Cal.App.4th 296 (2004) ......................................................... 13, 15

*Newport Harbor Ventures, LLC v. Morris Cerullo World*
    *Evangelism,*
    4 Cal.5th 637 (2018) .......................................................................... 36

*Newtok Vill. v. Patrick,*
    21 F.4th 608 (9th Cir. 2021) .............................................................. 19

*Park v. Bd. of Trs. of Cal. State Univ.,*
    2 Cal.5th 1057 (2017) ................................................................... 17, 20

*Parker v. Spotify USA, Inc.,*
    569 F.Supp.3d 519 (W.D. Tex. 2021) ................................................. 41

*People ex rel. Strathmann v. Acacia Rsch. Corp.,*
    210 Cal.App.4th 487 (2012) ............................................................... 14

*Perdue v. Kenny A. ex rel. Winn,*
    559 U.S. 542 (2010) ............................................... 23, 25, 27, 28, 29

*Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*,
   946 F.Supp.2d 957 (N.D. Cal. 2013) .................................................. 37

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
   890 F.3d 828 (9th Cir. 2018) ............................................................... 40

*Ring v. Spina*,
   166 F.2d 546 (2d Cir. 1948) ............................................................... 20

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
   559 U.S. 393 (2010) ......................................................... 34, 36, 39, 40

*Symmonds v. Mahoney*,
   31 Cal.App.5th 1096 (2019) ............................................................... 16

*Tourgeman v. Nelson & Kennard*,
   222 Cal.App.4th 1447 (2014) ...................................................... 12, 15

*Travelers Cas. Ins. Co. of Am. v. Hirsh*,
   831 F.3d 1179 (9th Cir. 2016) ..................................................... 38, 41

*United States ex rel. Newsham v. Lockheed Missiles & Space Co.*,
   190 F.3d 963 (9th Cir. 1999) ....................................................... 35, 40

*Unity Healthcare, Inc. v. County of Hennepin*,
   308 F.R.D. 537 (D. Minn. 2015) ........................................................ 41

*Verizon Del., Inc. v. Covad Commc'ns Co.*,
   377 F.3d 1081 (9th Cir. 2004) ........................................................... 32

*Weeks v. Baker & McKenzie*,
   63 Cal.App.4th 1128 (1998) ............................................................... 23

*Wood v. Fla. Dep't of Educ.*,
   142 F.4th 1286 (11th Cir. 2025) ........................................................ 19

## Statutes

28 U.S.C. § 1291.................................................................................. 3

28 U.S.C. § 1331.................................................................................. 2

28 U.S.C. § 1367(a) ........................................................................... 2

28 U.S.C. § 2072(a) ........................................................................... 39

Cal. Civ. Proc. Code

§ 425.16................................................................................... 1

§ 425.16(b)(1) ...................................................................... 16

§ 425.16(e) ............................................................................ 16

§ 425.16(f) ............................................................................. 31

§ 425.16(g) ............................................................................ 31

§ 425.17................................................................................. 12

§ 425.17(a) ............................................................................ 12

§ 425.17(b) ............................................................................ 12

§ 425.17(b)(1) ...................................................................... 13

§ 425.17(b)(2) ...................................................................... 13

§ 425.17(b)(3) ...................................................................... 13

Cal. Educ. Code

§ 200 ....................................................................................... 14

§ 200 et seq. .......................................................................... 18

§ 201(d) ................................................................................. 14

§ 202(c) .................................................................................. 14

§ 51500 .................................................................................. 18

§ 51501 .................................................................................. 18

## Rules

9th Cir. R. 28-2.6 ............................................................................. 44

Fed. R. Civ. P. 12(b)(6) .............................................................. *passim*

Fed. R. Civ. P. 56 ........................................................... 38, 39, 40

Fed. R. Civ. P. 56(d)(2) ................................................................ 39

## Miscellaneous

Caleb P. Lund, *It's Time to SLAPP Back: Why California's Anti-SLAPP Statute Should Not Apply in Federal Court,* 44 Sw. L. Rev. 97 (2015) ........................................................ 35, 36, 41

19 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 4509 (3d ed. 2025) ...................................................... 35, 39

Charles W. Adams & Mbilike M. Mwafulirwa, *The Last Lecture: State Anti-SLAPP Statutes and the Federal Courts*, 96 St. John's L. Rev. 1, (2022) ................................................ 30

Libor Jany & Suhauna Hussain, *Thousands of pro-Palestinian protesters rally in downtown Los Angeles*, L.A. Times (Oct. 21, 2023) <https://tinyurl.com/latimes-rally-2023> ............................................................................................... 28

Maya Mirsky, *Man in 'violent' Star of David baseball cap asked 'Are you a Zionist?' and told to leave Oakland cafe*, Jewish News of N. Cal. (Oct. 30, 2024) <https://tinyurl.com/mirsky-2024> ...................................................... 30

Michael Blackshire & Christopher Goffard, *Hundreds of pro-Palestinian protesters rally in L.A. ahead of Oct. 7 anniversary*, L.A. Times (Oct. 5, 2024) <https://tinyurl.com/latimes-rally-2024> ........................................... 28

Robert I. Weil & Ira A. Brown, *California Practice Guide: Civil Procedure Before Trial* ¶ 7:1076 (Rutter Group 2025) ............. 32

*San Francisco protests spark antisemitic vandalism at cafe,* Axios (June 12, 2025) https://tinyurl.com/mannys-2025 ................... 30

5 Witkin, *California Procedure* § 1019 (6th ed. 2025) ........................... 36

Yando Peralta, *State Anti-SLAPPs and Erie: Murky, but Not Chilling*, 26 Fordham Intell. Prop. Media & Ent. L.J. 769 (2016) .... 42

## APPELLANTS' OPENING BRIEF

### INTRODUCTION

This appeal challenges a district court order granting prevailing party attorney's fees under California's anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16. The fee order followed an order granting Defendants' anti-SLAPP motions to strike and Federal Rule of Civil Procedure 12(b)(6) motions to dismiss, which is currently on appeal before this Court in case number 24-7676.

Plaintiffs are parents and teachers in the Los Angeles Unified School District (LAUSD) seeking declaratory and injunctive relief to stop the district from teaching a discriminatory antisemitic curriculum. The curriculum is now being taught to LAUSD students and is poised to spread to more classrooms. It demonizes all Israeli Jews as colonialist settlers, traffics in antisemitic stereotypes, and vilifies Zionism, which is a central tenet of Jewish practice and custom. Plaintiffs have appealed from the district court's order dismissing their complaint without leave to amend under Rule 12(b)(6). The damage to parents, children and teachers should not be exacerbated by this crushing, nearly $600,000 fee award.

1

The fee order should be reversed for several reasons. First, since the order granting the anti-SLAPP motion should be reversed, the fee order should fall with it. Second, the fee order should be reversed (or at least reduced) because it is excessive. Finally, this Court should grant initial en banc hearing to decide whether anti-SLAPP motions (and accompanying fee motions) can be brought in federal court at all, to the extent that issue is not decided in *Gopher Media LLC v. Melone*, case number 24-2626.

## JURISDICTIONAL STATEMENT

The district court had original jurisdiction over Plaintiffs' federal claims under 28 U.S.C. § 1331 and supplemental jurisdiction over their state claims under 28 U.S.C. § 1367(a).

The district court entered judgment on the motions to dismiss and anti-SLAPP motions to strike on November 30, 2024. (1-FeesER-51.)[1] Plaintiffs filed a timely notice of appeal from the judgment on December

---

[1]  This brief cites to the "FeesER" to refer to the excerpts of record filed in support of this appeal from the attorney fee order. It cites to the "MeritsER" to refer to the excerpts of record filed in support of the related appeal in case number 24-7676.

2

17, 2024 (11-MeritsER-2360–63), and an appellants' opening brief on

May 5, 2025 (ECF No. 20).

The district court entered its order granting the motions for fees

on May 23, 2025.  (1-FeesER-65.)  Plaintiffs filed a timely notice of

appeal from the fees order on May 28, 2025.  (5-FeesER-1015–17.)  This

Court has jurisdiction over Plaintiffs' appeal under 28 U.S.C. § 1291.

## STATEMENT OF ISSUES PRESENTED

(1)    If the order granting Defendants' anti-SLAPP motion is

reversed, should the resulting anti-SLAPP fee award also be reversed?

(2)    If the Court affirms the dismissal of Plaintiffs' claims on the

basis of justiciability or failure to state a claim under Rule 12(b)(6),

should the fee award be reversed because the district court's ruling

granting the anti-SLAPP motions was still incorrect?

(3)    Even if the order granting Defendants' anti-SLAPP motion

stands, should the anti-SLAPP fee award nevertheless be reversed or

reduced?

(4)    Should the Court grant an en banc hearing in this case (and

the related merits appeal) to determine whether California's anti-

3

SLAPP statute (including its fee-shifting provision) applies in federal court at all?

## STATEMENT OF THE CASE

**A. Concerned Jewish Parents and Teachers of Los Angeles sue the public school district, a teachers union, a curriculum developer, and three individuals, alleging violations of statutory and constitutional rights under federal and state law.**

The underlying case arose from the introduction of an antisemitic curriculum to Los Angeles's public schools. The curriculum's supporters have described its goal: to "always be confronting Zionism" which it vilifies as a "settler-colonial ideology that justifies ethnic cleansing." (2-FeesER-88, 117–18.) It labels the democratic country of Israel a "fascist dictatorship." (2-FeesER-88, 117–18.) For Plaintiffs, Zionism is essential to their religion and a part of their religious practice. (2-FeesER-73, 110.) The Torah and other sacred Jewish texts revolve around the ancient and longstanding connection of the Jewish people to the land of Israel and its essential part in daily Jewish religious life. (2-FeesER-110–17.)

In 2022, Plaintiffs sued LAUSD, United Teachers Los Angeles (UTLA), and the Liberated Ethnic Studies Model Curriculum

4

Consortium (the Consortium), which designed the curriculum in question. They also sued three individuals prominently involved in the dissemination of the curriculum: UTLA president Cecily Myart-Cruz; Consortium secretary Theresa Montaño; and Consortium co-founder Guadalupe Carrasco Cardona.

Plaintiffs alleged violations of: (1) their equal protection rights under the United States and California Constitutions; (2) their right to religious free exercise under the First Amendment; (3) their rights under Title VI of the 1964 Civil Rights Act; and (4) California's Education Code. (2-FeesER-137.) They challenged the current and future secret use of antisemitic curriculum in LAUSD classrooms, and sought declaratory and injunctive relief. (2-FeesER-137–39.) The complaint expressly disclaimed seeking any relief against Defendants' speech outside the classroom. (2-FeesER-128–30.)

### B.    Defendants move to dismiss. The non-LAUSD Defendants also move to strike Plaintiffs' state-law claims under California's anti-SLAPP statute.

The non-LAUSD Defendants—UTLA and Myart-Cruz (collectively, the UTLA Defendants), the Consortium, Montaño, and Cardona (collectively, the Consortium Defendants)—moved to dismiss

5

Plaintiffs' complaint under Rule 12(b)(6) (7-MeritsER-1426–59; 8-MeritsER-1546–76) and also filed special motions to strike under California's anti-SLAPP statute (8-MeritsER-1474–1509, 1577–91). The district court granted those motions, dismissing the complaint without leave to amend.  (1-FeesER-2–50.)  As relevant here, the court ruled that none of Plaintiffs' causes of action stated a claim.  (1-FeesER-26–37.)  The court also dismissed Plaintiffs' state-law claims against the non-LAUSD Defendants under the anti-SLAPP statute.  (1-FeesER-42–48.)

### C.  The non-LAUSD Defendants move for attorney's fees under California's anti-SLAPP statute.  Plaintiffs oppose the motion.

The district court entered judgment on the merits on November 30, 2024.  (1-FeesER-51.)  On December 30, 2024, the non-LAUSD Defendants filed motions for fees as the prevailing parties, under the California anti-SLAPP statute.  (2-FeesER-324–57 [UTLA Defendants' motion]; 4-FeesER-745–62 [Consortium Defendants' motion].)  The Consortium Defendants also sought an enhanced fee award, citing "excellent results with broad significance" (4-FeesER-760), contingent

6

risk (4-FeesER-761), and the purported undesirability of the case and accompanying risk of ostracization (4-FeesER-761–62).

Plaintiffs opposed the motion. (5-FeesER-970–73.) They argued that anti-SLAPP attorney's fees can be awarded only for state-law claims in federal court, and that because the non-LAUSD Defendants' motions failed to distinguish between work spent on federal and state-law claims, they could not recover any fees. (5-FeesER-970–73.)

**D.  The district court grants the fee motions and awards substantial attorney's fees to the non-LAUSD Defendants covering work related to both state and federal claims and a multiplier.**

The district court entered its order granting the motions for attorney's fees on May 23, 2025. (1-FeesER-52.) Using the lodestar method, the district court awarded $596,696.50 in total attorney's fees: $348,594.50 to the UTLA Defendants and $248,102 to the Consortium Defendants. (1-FeesER-57–59, 63–64.) It also awarded the UTLA Defendants $438.60 in costs. (1-FeesER-63.)

The district court ruled that Plaintiffs had waived any objection to the requested fees because their opposition did not "provide[] any specific basis for challenging the reasonableness of the requested fees." (1-FeesER-56.) Even absent waiver, the court concluded the federal and

7

state-law claims "overlapped significantly," and thus no apportionment between the fees incurred in opposing each set of claims was required. (1-FeesER-55–56.)

The court also granted the Consortium Defendants' request for an enhanced fee award. It applied a 1.2 multiplier, citing as support what it described as "the contingent risk, the complexity of the issues involved, the potential undesirability of the case, and the accompanying risk of ostracization." (1-FeesER-60–62.)

Plaintiffs appealed. (5-FeesER-1015–17.)

## SUMMARY OF THE ARGUMENT

The district court's fee award rests on its ruling granting the non-LAUSD Defendants' anti-SLAPP motions, so if this Court reverses that ruling in Plaintiffs' appeal in case number 24-7676, then the Court must reverse the fee award as well.

Even if the Court affirms the dismissal of Plaintiffs' claims on the basis of justiciability or failure to state a claim under Rule 12(b)(6), it should still reverse the fee award because the district court's ruling granting the anti-SLAPP motions was incorrect for two reasons. First, Plaintiffs' lawsuit falls within an exception to the anti-SLAPP statute.

8

Second, even if the exception doesn't apply, the lawsuit was not a SLAPP because the injury-producing conduct on which Plaintiffs' state-law claims were based was not protected petitioning activity. The anti-SLAPP statute's fee-shifting provision does not apply to defendants who obtain dismissal on other grounds. *See La Liberte v. Reid*, 966 F.3d 79, 88–89 (2d Cir. 2020). Thus, if the dismissal of Plaintiffs' claims is upheld on grounds unrelated to the anti-SLAPP motions, the fee award must be reversed.

In the alternative, if the issue has not been resolved in *Gopher Media LLC v. Melone*, No. 24-2626, this Court could grant initial en banc hearing in this case to revisit whether California's anti-SLAPP statute applies in federal court at all. The Court could then address the tension within the Ninth Circuit, and a protracted split among the federal courts of appeals, on this important legal question. The correct answer is that the anti-SLAPP statute—including its fee-shifting provision—does not apply in federal court at all. This Court should recognize this correct rule, overturn its prior precedent going the other way, and reverse the fee award here on that basis.

9

# ARGUMENT

## I.  If the district court's order granting the non-LAUSD Defendants' anti-SLAPP motions is reversed, the fee award must be reversed along with it.

The district court awarded fees to the non-LAUSD Defendants as prevailing parties on their anti-SLAPP motions.  Where "the costs to which a prevailing party [is] entitled include attorney's fees authorized by statute," "[a]n order awarding costs falls with a reversal of the judgment on which it is based."  *Bevis v. Terrace View Partners, LP*, 33 Cal.App.5th 230, 263 (2019) (citation omitted); *Graham-Sult v. Clainos*, 756 F.3d 724, 751 (9th Cir. 2014) ("Because we reverse the district court's grant of [defendant's] motion to strike, we must also vacate his award of attorney's fees.").  If this Court reverses the district court's ruling granting the anti-SLAPP motions to strike, it must also reverse the order awarding fees.

10

## II. Even if the judgment dismissing Plaintiffs' claims is affirmed, the fee order should nevertheless be reversed because there was no basis to apply the anti-SLAPP statute here.

### A. The non-LAUSD Defendants must show entitlement to relief under the anti-SLAPP statute, not simply Rule 12(b)(6).

The bulk of Plaintiffs' claims arose under federal law. The district court's fee award rests solely on its ruling that the non-LAUSD Defendants prevailed on their anti-SLAPP motions (in addition to their duplicative motions to dismiss under Rule 12(b)(6)), which they brought only against the state-law claims. 1-FeesER-42–48; *see Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010) ("[T]he anti-SLAPP statute does not apply to federal law causes of action.").

In other words, even if this Court concludes Plaintiffs' claims were neither justiciable nor stated a claim upon which relief could be granted under Rule 12(b)(6), the district court's fee order can stand only if this Court *also* concludes that (1) the anti-SLAPP statute applies to the claims at issue, and (2) Defendants met their burdens under the anti-SLAPP statute to prevail. *See La Liberte*, 966 F.3d at 88–89 (citation omitted) (noting that California's anti-SLAPP statute "does not purport

11

to make attorney's fees available to parties who obtain dismissal by
other means, such as under Federal Rule 12(b)(6)").

### B.    The anti-SLAPP statute categorically does not apply to public interest lawsuits like this one.

In 2003, the California Legislature identified a "disturbing abuse"
of California's anti-SLAPP statute, "which has undermined the exercise
of the constitutional right[] of . . . petition for the redress of grievances,
contrary to the purpose and intent" of the statute.  Cal. Civ. Proc. Code
§ 425.17(a) (West 2016)  In response, it enacted Civil Procedure Code
section 425.17, which exempts actions "brought solely in the public
interest or on behalf of the general public."  Cal. Civ. Proc. Code
§ 425.17(b) (West 2016); *see Club Members for an Honest Election v.
Sierra Club*, 45 Cal.4th 309, 316–17 (2008) (interpreting "the term
'solely'" to embody the Legislature's intent that the exemption cannot
"apply to an action that seeks a more narrow advantage for a particular
plaintiff").

"[T]he applicability of the public interest exception is determined
by examining the *complaint*."  *Tourgeman v. Nelson & Kennard*, 222
Cal.App.4th 1447, 1466 (2014).  The exception applies if three specified
conditions are met.  First, "[t]he plaintiff does not seek any relief

12

greater than or different from the relief sought for . . . a class of [the general public of] which the plaintiff is a member." Cal. Code Civ. Proc. § 425.17(b)(1). Second, "[t]he action, if successful, would enforce an important right affecting the public interest." *Id.* § 425.17(b)(2). Third, "[p]rivate enforcement is necessary and places a disproportionate financial burden on the plaintiff." *Id.* § 425.17(b)(3).

Plaintiffs' complaint met all three statutory requirements for the exception to apply. First, Plaintiffs sought no "individualized relief." *Cf. Club Members*, 45 Cal.4th at 320. Their complaint was "brought on behalf of" a civil rights group which "broadly advocat[es]" for all Jewish and Zionist people, as well as for its individual members. (2-FeesER-76, 79.) As to the non-LAUSD Defendants, Plaintiffs' prayer for relief asked the court to declare that the challenged materials violated their federal and state civil rights, and to enjoin Defendants from using the materials "in their public school classrooms" or in publicly-funded training sessions. (2-FeesER-139.) They sought no greater relief than could be sought by any Jewish parent or teacher in LAUSD. Cal. Civ. Proc. Code § 425.17(b)(1); *see N. Cal. Carpenters Reg'l Council v. Warmington Hercules Assocs.*, 124 Cal.App.4th 296, 300 (2004) (holding

13

first requirement met where plaintiffs' complaint sought "to vindicate public policy by assuring enforcement" of city labor rule).

Second, if Plaintiffs prevail, they will have secured an important right "affecting the public interest": the right to attend LAUSD schools free from antisemitic curriculum. *See* Cal. Educ. Code § 202(c) (West 2021) ("Education is a fundamental right under the California Constitution."). The purpose of California's educational equity laws is "to prohibit acts . . . contrary to" its state policy: "afford[ing] all persons in public schools, regardless of their . . . nationality, race or ethnicity, religion . . . equal rights, and opportunities in the educational institutions of the state." *Id.* § 200; *see id.* § 201(d) (expressing Legislature's intent "to prevent and respond to acts of hate violence and bias-related incidents . . . occurring at an increasing rate in California's public schools."). Enforcing this policy will benefit hundreds of thousands of students and teachers, Jewish and non-Jewish alike. *See People ex rel. Strathmann v. Acacia Rsch. Corp.*, 210 Cal.App.4th 487, 504 (2012) (holding second requirement met where plaintiff's action, if successful, would effectuate the purpose of a state law); *see also* 2-FeesER-78 (noting Jews are "far from the only [ones] harmed by the

14

[curriculum]" which "silences and devalues many groups" rather than "include voices previously silenced").

Third, private enforcement is necessary because, at the time the lawsuit was filed, there had been no government action to enforce the rights Plaintiffs seek to vindicate. *See N. Cal. Carpenters Reg'l Council*, 124 Cal.App.4th at 301 (holding third requirement met where city had "failed to take any action to enforce" its policy).

Because Plaintiffs' lawsuit fits squarely within the public interest exception, the anti-SLAPP statute does not apply, and the district court erred in granting the non-LAUSD Defendants' special motions to strike. *See Club Members*, 45 Cal.4th at 316 ("If a complaint satisfies the provisions of the [public interest] exception, it may not be attacked under the anti-SLAPP statute."); *N. Cal. Carpenters Reg'l Council*, 124 Cal.App.4th at 299 ("[W]e do not need to discuss the merits of the motion to strike [if the public interest exception applies]."); *Tourgeman*, 222 Cal.App.4th at 1460.

C. **Even if this lawsuit does not fall within the public interest exception, the anti-SLAPP statute still does not apply because the injury-producing conduct that forms the basis of Plaintiffs' claims is not protected petitioning activity.**

1. **As a threshold matter, the non-LAUSD Defendants must establish that Plaintiffs' claims are based on protected petitioning activity as defined by the anti-SLAPP statute.**

Under the anti-SLAPP statute, defendants can move early on to strike meritless claims which "arise from acts in furtherance of a person's 'right of petition or free speech under the [federal or state Constitution] in connection with a public issue.'" *FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal.5th 133, 139 (2019) (citation omitted); *see* Cal. Civ. Proc. Code § 425.16(b)(1) & (e).

An anti-SLAPP motion to strike proceeds in two steps. A defendant must first "establish that the challenged claim arises from activity" protected by the anti-SLAPP statute—in other words, whether the plaintiff's lawsuit is a SLAPP at all. *Baral v. Schnitt*, 1 Cal.5th 376, 384 (2016). This requires "'showing that the plaintiff's claims arise from the defendant's constitutionally protected free speech or petition rights' in connection with a public issue or an issue of public interest." *Symmonds v. Mahoney*, 31 Cal.App.5th 1096, 1103 (2019) (citation

16

omitted).  Only if the defendant satisfies step one does the burden shift to the plaintiff at step two to "demonstrate the merit of the claim by establishing a probability of success." *Baral*, 1 Cal.5th at 384.

The California Supreme Court has clarified that "a claim is not subject to [an anti-SLAPP] motion to strike simply because it contests an action or decision that was arrived at *following* speech or petitioning activity, or that was thereafter communicated *by means of* speech or petitioning activity.  Rather, a claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted." *Park v. Bd. of Trs. of Cal. State Univ.*, 2 Cal.5th 1057, 1060 (2017) (emphasis added); *id.* at 1064 (explaining that a SLAPP determination requires that courts "take[] care to respect the distinction between activities that form the basis for a claim and those that merely lead to the liability-creating activity or provide evidentiary support for the claim").

The district court here granted the non-LAUSD Defendants' anti-SLAPP motions because it decided they were being sued for "advocating for curricular offerings with which plaintiffs disagree."  (1-FeesER-46.)

17

In doing so, the district court misunderstood how the anti-SLAPP statute works and misidentified the basis of Plaintiffs' claims. (*See* Merits AOB 26.)[2]

> **2.  Plaintiffs' state-law claims are based on conduct by the non-LAUSD Defendants that violates California civil rights law, not on any speech or petitioning activity by those Defendants.**

The "wrong complained of" in this case is the stealthy proliferation of antisemitic curriculum taught by public school teachers in LAUSD public schools, in violation of the California Constitution's Equal Protection Clause and California's educational equity laws, Cal. Educ. Code §§ 200 et seq., 51500, 51501. (Merits AOB 51.) This is not "protected speech or petitioning activity" under the anti-SLAPP statute. Teacher speech in elementary and secondary public school classrooms that creates a racist or otherwise discriminatory learning environment is not protected by the First Amendment, and is surely not "an act in furtherance of" free speech rights. *Garcetti v. Ceballos*, 547 U.S. 410, 422–23 (2006); *Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 970

---

[2]  To distinguish from this document, appellants' opening brief filed in case number 24-7676 is cited as the "Merits AOB" throughout.

(9th Cir. 2011); *Wood v. Fla. Dep't of Educ.*, 142 F.4th 1286, 1291–92

(11th Cir. 2025) ("When a public-school teacher addresses her students

within the four walls of a classroom—whether orally or in writing—she

is unquestionably acting 'pursuant to [her] official duties'" and

"therefore speaks as a government employee, not a citizen.").

Plaintiffs expressly disavowed that their claims were based on

anything beyond classroom instruction which demonizes a Jewish

practice. (2-FeesER-128–30; 8-MeritsER-1617–22; *see* Merits AOB 12,

17, 39–41, 69.) The district court acknowledged this, yet still

determined that "plaintiffs' contentions are belied by the substance of

[their complaint] and the arguments in their Opposition—[their

complaint] focuses on the non-District defendants' actions and speech

outside of the classroom, and plaintiffs' Opposition argues that the non-

District defendants should be enjoined from encouraging teachers to use

the challenged materials." (1-FeesER-46.)

The district court erred by ignoring the fundamental principle of

civil procedure that plaintiffs are the masters of their complaint, which

here sought relief limited to in-school instruction. 2-FeesER-137–39;

Merits AOB 12, 17, 69; *Newtok Vill. v. Patrick*, 21 F.4th 608, 616 (9th

Cir. 2021) ("A plaintiff is the master of his complaint and responsible for articulating cognizable claims."); *Ring v. Spina*, 166 F.2d 546, 549 (2d Cir. 1948) ("[W]e turn to the prayers for relief for indications of the pleader's intent.").  Some of the actions and speech described in Plaintiffs' complaint occurred "outside the classroom": at a professional development workshop jointly sponsored by UTLA and LAUSD (2-FeesER-85), at an Ethnic Studies information panel hosted by UTLA and led by Myart-Cruz, Montaño, and Cardona (2-FeesER-71, 87–88, 109, 117), and at a teachers conference organized by the Consortium where UTLA leadership policed the door and barred Plaintiff Amy Leserman, a Jewish teacher in the district, from entering (2-FeesER-107–08).  But the request for relief in the complaint seeks to remedy only teacher speech in the classroom, not any outside public speech.  (2-FeesER-128–30, 137–39.)

To the extent that speech outside the classroom is mentioned in the complaint, it merely "provide[s] evidentiary support for" Plaintiffs' state-law claims.  *See Park*, 2 Cal.5th at 1065 (explaining that just because a "discriminatory animus might have been evidenced by one or more communications by a defendant," this does not mean the claim is

20

based on such communications so as to be subject to an anti-SLAPP motion); *see also* 2-FeesER-129–30. Such actions and speech alerted Plaintiffs to, and supplied proof of, the non-LAUSD Defendants' intentions, but it did not form the basis of their claims.

The "liability-creating activity" at issue here is classroom instruction that violates California law. (*See* 2-FeesER-130–37 (alleging Defendants engaged in a conspiracy to hide from the public an antisemitic ethnic studies curriculum already in use in some classrooms, and likely to spread to more classrooms without action from the court).) The use of a discriminatory curriculum paid for by the government in public school classrooms is not speech or petitioning activity protected by the First Amendment. Because Plaintiffs' lawsuit was not a SLAPP, the district court should have ruled that the non-LAUSD Defendants' anti-SLAPP motions failed at the first step of the analysis, and denied the motions. The resulting anti-SLAPP fee award must therefore be reversed.

**D.    Even if the non-LAUSD Defendants properly prevailed on their anti-SLAPP motions, the district court's application of a fee multiplier was an abuse of discretion.**

**1.    California law governs the attorney's fees analysis in anti-SLAPP cases.**

"State law governs attorney's fees awards based on state fee-shifting laws, like California's anti-SLAPP statute.  Under California law, therefore, we review the district court's award of attorney's fees under the anti-SLAPP statute for abuse of discretion." *Graham-Sult*, 756 F.3d at 751 (citation omitted); *see In re Cal. Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 673 (9th Cir. 2025).  "Reversal is appropriate where (1) there is no reasonable basis for the ruling or (2) the trial court has applied the wrong test or standard in reaching its result." *Graham-Sult*, 756 F.3d at 751 (citation modified).

"[A] court assessing attorney fees begins with a . . . lodestar figure, based on the 'careful compilation of the time spent and reasonable hourly compensation of each attorney . . . involved in the presentation of the case.'" *Graham v. DaimlerChrysler Corp.*, 34 Cal.4th 553, 579 (2004) (citation omitted).  Courts can then adjust the lodestar fee up or down by applying a multiplier "based on factors including" the

22

complexity of the case and the contingent nature of the fee award. *Id.* (citation omitted).

California law is clear that multipliers are discretionary, not required simply because a case entails contingent risk or is difficult to litigate. *Ketchum v. Moses*, 24 Cal.4th 1122, 1138 (2001); *Weeks v. Baker & McKenzie*, 63 Cal.App.4th 1128, 1172 (1998) (explaining that availability of multiplier "does not mean . . .that the trial courts should enhance the lodestar figure in every case of uncertain outcome"); *see Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010) (citation omitted) ("[E]nhancements may be awarded in 'rare' and 'exceptional' circumstances."). Just as clear is the prohibition on double counting. In calculating a multiplier, courts should not consider factors like contingent risk and case complexity "to the extent they are already encompassed within the lodestar." *Ketchum*, 24 Cal.4th at 1138.

The complexity of the case, "in particular, appears susceptible to improper double counting; for the most part, the difficulty of a legal question and the quality of representation are already encompassed in the lodestar." *Id.*; *see Perdue*, 559 U.S. at 553 (citation omitted) ("[T]he novelty and complexity of a case generally may not be used as a ground

23

for an enhancement because these factors 'presumably [are] fully reflected in the number of billable hours recorded by counsel.'"). In *Ketchum*, the California Supreme Court advised that undesirability is another factor which tends to be "already encompassed" in the lodestar. 24 Cal.4th at p. 1138 (citation modified) (noting that the "rate [used to calculate the lodestar] is the product of a multiplicity of factors" including "the undesirability of the case"). The district court noted this restriction in a footnote (1-FeesER-61 n.5), but then proceeded to disregard it.

> **2.**    **The district court abused its discretion in applying a multiplier to enhance the Consortium Defendants' attorney's fees award.**

The district court used the lodestar method to determine the amount of reasonable attorney's fees for both the UTLA and Consortium Defendants. In addition, the court applied a 1.2 multiplier to the Consortium Defendants' award "due to the contingent risk, the complexity of the issues involved, the potential undesirability of the case, and the accompanying risk of ostracization." (1-FeesER-60–62.) The record does not support a fee multiplier under applicable law.

24

In particular, the district court failed to abide by the U.S. Supreme Court's stringent instructions for awarding a fee enhancement. "It is essential that the judge provide a reasonably specific explanation for . . . any award of an enhancement. . . . [W]ithout such review, widely disparate awards may be made, and awards may be influenced (or at least, may appear to be influenced) by a judge's subjective opinion regarding particular attorneys or the importance of the case." *Perdue*, 559 U.S. at 558.

***Complexity of the case:*** The district court credited the Consortium Defendants' attorney Mark Kleiman's characterization of the case as complex because it raised "novel questions" and included multiple parties. (1-FeesER-60–61.) Its order also cited a supporting declaration by "an experienced civil rights attorney" who noted "the complexity of civil rights and civil liberties cases more generally." (1-FeesER-61.)

While Kleiman declared that this case was complex because it "posed a novel problem" (5-FeesER-831–32), that problem was not a nuanced legal issue or obscure wrinkle of civil rights law. Per Kleiman, the problem was that the case "was only the second time [he] had

25

represented a defendant in a civil rights case" in his forty years of legal practice, and he "had literally no experience" analyzing claims like those Plaintiffs brought.  (5-FeesER-831–32.)  It may have been a new experience for Kleiman, but that is not the standard for a legal question's novelty.  Nor is an attorney's inexperience with some aspect of a case an indication that the case is complex.  The evidence on this factor was insufficient to warrant a multiplier.

***Undesirability of the case and risk of ostracization:***  In a footnote, the district court briefly explained its decision to depart from *Ketchum* and rely on this factor to support a multiplier: "the relevant market here does not appear to compensate" for the potential undesirability of the case.  (1-FeesER-61 & n.5)  The court then suggested that since the "[l]odestar analysis is generally the same under California law and federal law," its decision was also guided by a case from this circuit which approved of undesirability as a factor warranting a multiplier, *Guam Society of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 697 (9th Cir. 1996).  (1-FeesER-61 n.5 (citation omitted).)  The district court went badly astray.

26

It is not clear what evidence supported the court's conclusion that the market for legal services in Los Angeles does not "compensate" for a case's undesirability.  (1-FeesER-61 n.5)  And this highlights the primary error the district court committed in awarding a fee enhancement here—it did not do so with anything close to the specificity required by the Supreme Court in *Perdue*.  "[W]hen a trial judge awards an enhancement on an impressionistic basis, a major purpose of the lodestar method—providing an objective and reviewable basis for fees is undermined." *Perdue*, 559 U.S. at 558 (citation omitted).  That is precisely what the district court did here, and the resulting fee award should be reversed for this reason.

Finally, even if the district court abided by *Perdue*'s restrictions in airily referencing the unpopularity of the case without identifying specific and objective evidence to support that conclusion, *Guam Society* is inapposite, and the district court erred in relying on it here.  *Guam Society* concerned abortion rights and was litigated thirty years ago on the predominantly Catholic island territory of Guam.  The majority affirmed the district court's use of a multiplier, which it based on "the extreme undesirability of the case [and] the likelihood that no other

27

attorney on [the] island would have accepted the case." *Guam Soc'y*, 100 F.3d at 697. "Such an enhancement is clearly necessary . . . where the district court finds that the case is of the type that attorneys are unwilling to take for fear of ostracization." *Id.*

To support its application of a multiplier here, the district court cited Kleiman's defense of "free speech in support of an unpopular cause," though nothing in the record suggests the Palestinian cause is actually unpopular in Los Angeles. 1-FeesER-61; *see Perdue*, 559 U.S. at 546 (emphasis added) ("a party seeking fees has the burden of identifying a factor that the lodestar does not adequately take into account and proving *with specificity* that an enhanced fee is justified"). The substantial number of pro-Palestinian protests in Los Angeles the past few years belies any notion that this case was too unpopular for counsel to take on. *See, e.g.*, Libor Jany & Suhauna Hussain, *Thousands of pro-Palestinian protesters rally in downtown Los Angeles*, L.A. Times (Oct. 21, 2023, at 19:20 PT) <https://tinyurl.com/latimes-rally-2023>; Michael Blackshire & Christopher Goffard, *Hundreds of pro-Palestinian protesters rally in L.A. ahead of Oct. 7 anniversary*, L.A. Times (Oct. 5, 2024) <https://tinyurl.com/latimes-rally-2024>.

28

Certainly, nothing in the record even hints that the Consortium Defendants' position comes anywhere close to the level of unpopularity that the plaintiffs' position in *Guam Society* did.

The district court also relied on Kleiman's declaration that, in taking this case, "the threat of ostracization and the loss of business and referral relationships is quite real.  Lawyers who have advocated for Palestine . . . have been smeared as anti-Semites" on a website that acts as a watchdog against antisemitism.  (5-FeesER-835.)  Nothing suggests that Kleiman himself was "smeared" or that the lawyers he listed faced ostracization or suffered professional setbacks as a result of being named on the website.  The district court also quoted Stephen F. Rhode's supposition that "[m]any lawyers would have shied away from this case out of fear for their careers and reputations."  (1-FeesER-61.) The district court should not have considered a factor supported by such flimsy evidence, as doing so fell afoul of *Perdue*'s requirement that fee-seeking counsel prove their entitlement to a fee enhancement "with specificity," *Perdue*, 558 U.S. at 546, and its admonition against district courts "award[ing] an enhancement on an impressionistic basis," *id.* at 558.

29

The Consortium Defendants litigated their case in a sprawling West Coast metropolis that is one of the largest cities in the United States. The other Defendants in the case were able to retain counsel despite the alleged undesirability and risk of ostracization. Kleiman's baldfaced claims are belied by common sense. In 2025, a person walking into a coffee shop in a California city is more likely to be ostracized for self-identifying as a Jew than someone self-identifying as "a lawyer who advocate[s] for Palestine."[3]

## III. In the alternative, this Court could grant initial en banc hearing to revisit whether California's anti-SLAPP statute applies in federal court and hold that it does not.

### A. Anti-SLAPP practice in federal court has diverged drastically from the California Legislature's design in drafting the anti-SLAPP statute.

California's anti-SLAPP statute provides "strong measures" to a defendant. Charles W. Adams & Mbilike M. Mwafulirwa, *The Last Lecture: State Anti-SLAPP Statutes and the Federal Courts*, 96 St.

---

[3]  *See, e.g.*, *San Francisco protests spark antisemitic vandalism at cafe*, Axios (June 12, 2025) <https://tinyurl.com/mannys-2025>; Maya Mirsky, *Man in 'violent' Star of David baseball cap asked 'Are you a Zionist?' and told to leave Oakland cafe*, Jewish News of N. Cal. (Oct. 30, 2024) <https://tinyurl.com/mirsky-2024>.

John's L. Rev. 1, 1–2 (2022). In state court, while the remedy can be extreme (early dismissal on the merits with no discovery and fees to the prevailing party), that is tempered by the more limited time during which fees can be incurred by defendants and thus paid by plaintiffs through fee-shifting. Moreover, a trial court's order on an anti-SLAPP motion is immediately appealable. The California Legislature struck this careful balance to secure speedy and inexpensive relief in cases implicating the First Amendment.

This Court has fundamentally altered the anti-SLAPP statute in an attempt to comply with the *Erie* doctrine, in the process making it more expensive and less speedy. For starters, the statute limits discovery, Cal. Civ. Proc. Code § 425.16(f) & (g), and in California state court, discovery is stayed by an anti-SLAPP motion, "absent permission from the court," *Baral*, 1 Cal.5th at 384 n.5. This Court, by contrast, does not apply those provisions. *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 845–46 (9th Cir. 2001).

In state court, a plaintiff cannot amend "in the face of an anti-SLAPP motion, and particularly after obtaining a ruling on" the motion. *Med. Marijuana, Inc. v. ProjectCBD.com*, 46 Cal.App.5th 869, 897

31

(2020); *see Barry v. State Bar of Cal.*, 2 Cal.5th 318, 328 (2017); Robert I. Weil & Ira A. Brown, *California Practice Guide: Civil Procedure Before Trial* ¶ 7:1076 (Rutter Group 2025). This Court *requires* district courts to grant leave to amend a complaint when an anti-SLAPP motion is filed or granted. *Verizon Del., Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004).

As applied by this Court, the anti-SLAPP statute's mechanisms for prompt and inexpensive resolution are lost. *See Barry*, 2 Cal.5th at 328. In federal court, attorney's fees now amount to even larger sums because more litigation occurs before an anti-SLAPP motion is granted.

For plaintiffs in federal court, this creates a crushing economic burden that is mitigated in state court because those courts apply the anti-SLAPP statute as written. Plaintiffs' only goal in bringing this lawsuit was to protect children and teachers from antisemitic curriculum in public schools. If their complaint failed to state a claim (it did not), Rule 12(b)(6) provided its typical dismissal safeguard, without *also* punishing them financially for seeking to vindicate their constitutional and statutory rights to be free from antisemitism. If Defendants prevail, Concerned Parents will have to pay nearly

32

$600,000 in attorney's fees (and more for the appeal) because Defendants tacked a largely redundant anti-SLAPP motion onto their Rule 12(b)(6) motion to dismiss.

This is not what the California Legislature had in mind. It drafted the provisions of the anti-SLAPP statute to work together as an interdependent whole, not to be selected à la carte based on which sections do not conflict with the Federal Rules. The correct rule of law is that none of the anti-SLAPP statute applies in federal court because the statute is procedural and too much of it conflicts with the Federal Rules.

Had the anti-SLAPP statute been applied in federal court as it is in state court, the district court would have been required to address the issues raised by the anti-SLAPP motions within sixty days of the filing of the initial complaint, after which this Court would have been obligated to adjudicate an immediate appeal. The fee award, if the motion was successful, would have been far less because it would not have included multiple rounds of anti-SLAPP motions to successive complaints. (*See* Merits AOB 9–10.) The à la carte approach to this state procedural statute dramatically inflates the fee award a plaintiff

faces for losing the motion, upsetting the careful balance struck by the California Legislature in drafting the anti-SLAPP statute.

### B. The anti-SLAPP statute does not apply in federal court.

#### 1. California's anti-SLAPP statute is procedural.

Under the *Erie* doctrine, "a federal district court will apply its own rules of procedure, but state . . . substantive law." *Cooper v. Tokyo Elec. Power Co. Holdings*, 960 F.3d 549, 557 (9th Cir. 2020); *see Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 272 (9th Cir. 2013) (*Makaeff I*) (Kozinski, J., concurring) ("[W]hen it comes to procedure, federal law governs.")

Facing a conflict between federal and state law, federal courts "first ask whether a Federal Rule of Civil Procedure . . . governs. If so, we will apply that rule—even in the face of a countervailing state rule— as long as it is constitutional and within the scope of the Rules Enabling Act." *In re Cnty. of Orange*, 784 F.3d 520, 527 (9th Cir. 2015) (citation omitted); *see Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010).

"[T]he terms of the Rules Enabling Act and relevant constitutional restrictions, rather than the principle of *Erie* . . . govern the validity and

34

applicability of the Federal Rules of Civil Procedure in the federal courts." 19 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 4509 (3d ed. 2025). Only where *no* applicable Federal Rule governs does a court conduct further analysis under *Erie* and its progeny. *See Makaeff I*, 715 F.3d at 273 (Kozinski, J., concurring) (noting conflict analysis "only arises if the state rule is substantive"); Caleb P. Lund, *It's Time to SLAPP Back: Why California's Anti-SLAPP Statute Should Not Apply in Federal Court*, 44 Sw. L. Rev. 97, 102 (2015) (explaining the "direct collision analysis is unnecessary" where the state law is procedural "because the Federal Rules of Civil Procedure indubitably apply").

In *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, this Court held that California's anti-SLAPP statute could "exist side by side" with the Federal Rules of Civil Procedure, "each controlling its own intended sphere of coverage without conflict." 190 F.3d 963, 971–72 (9th Cir. 1999) (citation omitted). But the *Newsham* court proceeded to the conflict analysis "without first determining whether the state rule is, in fact, substantive. *It's not*." *Makaeff I*, 715 F.3d at 273 (Kozinski, J., concurring) (emphasis added); *see id.* at 275

35

(Paez, J., concurring) (calling the anti-SLAPP statute "quintessentially procedural"). Indeed, the California Supreme Court, in a decision postdating *Newsham*, confirmed that its anti-SLAPP statute is "a procedural device." *Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism*, 4 Cal.5th 637, 645 (2018); *see* Lund, *supra*, at 99 ("Consider that California's anti-SLAPP statute is codified as a civil procedure."); 5 Witkin, *California Procedure* § 1019 (6th ed. 2025) (describing anti-SLAPP statute as "procedural in nature" and "merely a procedural screening mechanism").

### 2. The anti-SLAPP statute answers questions already accounted for by the Federal Rules of Civil Procedure.

The U.S. Supreme Court clarified the conflict-of-law analysis in *Shady Grove*, 559 U.S. at 398. A district court "must first determine whether [a Federal Rule] answers the question in dispute. If it does, it governs—[state] law notwithstanding—unless it exceeds statutory authorization or Congress's rulemaking power. We do not wade into *Erie*'s murky waters unless the federal rule is inapplicable or invalid." *Id.* (citations omitted).

The anti-SLAPP statute "establishes the circumstances under which" pretrial dismissal is warranted, a question "already answered (differently)" by the Federal Rules. *La Liberte*, 966 F.3d at 87 (quoting *Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328, 1333–34 (D.C. Cir. 2015) (Kavanaugh, J.)).

**Federal Rule of Civil Procedure 12(b)(6)** answers one question in dispute in an anti-SLAPP motion: have plaintiffs alleged sufficient factual matter to proceed beyond the pleading stage? Under the anti-SLAPP framework, once a defendant makes a "prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's rights of petition or free speech . . . the burden shifts to the plaintiff to demonstrate a *probability of prevailing* on the challenged claims." *Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, 946 F.Supp.2d 957, 967 (N.D. Cal. 2013) (emphasis added) (citation omitted), *aff'd*, 609 F.App'x 497 (9th Cir. 2015). This burden on plaintiffs is incompatible with Rule 12(b)(6).

Accessing the federal courts is far from easy, but there is no "probability requirement at the pleading stage." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Instead, "[t]o survive a [Rule

37

12(b)(6)] motion to dismiss," a plaintiff must submit a complaint "contain[ing] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted); *see id.* ("The plausibility standard is not akin to a 'probability requirement.'").  Indeed, "a well-pleaded complaint may proceed *even if* it strikes a savvy judge that actual proof of those facts is improbable."  *Twombly*, 550 U.S. at 556 (emphasis added); *see La Liberte*, 966 F.3d at 87 (citation omitted) (holding the Federal Rules "express 'with unmistakable clarity' that proof of probability of success on the merits 'is not required in federal courts' to avoid pretrial dismissal"); *Abbas*, 783 F.3d at 1334; *see also Travelers Cas. Ins. Co. of Am. v. Hirsh*, 831 F.3d 1179, 1183 (9th Cir. 2016) (Kozinski, J., concurring).

      **Federal Rule of Civil Procedure 56** answers the other question in dispute in an anti-SLAPP motion: whether plaintiffs have presented sufficient evidence to proceed to trial.  As discussed above, in opposing an anti-SLAPP motion, a plaintiff must "prove that it is likely, and not merely possible, that a reasonable jury would find in his favor."  *La Liberte*, 966 F.3d at 87 (citation omitted).

But under Rule 56, plaintiffs may proceed to trial as long as they can identify a "genuine dispute as to any material fact." And "[u]nder this Rule, a party is ordinarily entitled to test the proof for a claim only after the conclusion of discovery." *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1350 (11th Cir. 2018); *see* Fed. R. Civ. P. 56(d)(2). California's anti-SLAPP statute "nullifies that entitlement." *Abbas*, 783 F.3d at 1334; *see Carbone*, 910 F.3d at 1350.

Because Rules 12(b)(6) and 56 answer the "question in dispute" in an anti-SLAPP motion, the first step of the *Shady Grove* analysis is satisfied. 559 U.S. at 398. All that remains is to determine whether these Rules "exceed[] statutory authorization or Congress's rulemaking power." *Id.*

The Supreme Court can "prescribe general rules of practice and procedure and rules of evidence" for lower federal courts under the Rules Enabling Act. 28 U.S.C. § 2072(a); *see* Wright & Miller, *supra*, § 4509. "A Federal Rule of Civil Procedure violates the Rules Enabling Act if it abridges, enlarges, or modifies any substantive right." *Abbas*, 783 F.3d at 1336 (noting the "Supreme Court has rejected every challenge to the Federal Rules . . . under the Rules Enabling Act" and

39

concluding Rules 12 and 56 "are valid under the Rules Enabling Act");

*Carbone*, 910 F.3d at 1357 (concluding with "little difficulty . . . that

Rules . . . 12, and 56 comply with the Rules Enabling Act and the

Constitution").

The second *Shady Grove* step is therefore satisfied as to both

Rules 12(b)(6) and 56.  Because state anti-SLAPP statutes cover the

same ground as those rules, they cannot apply in federal court under

*Shady Grove.*

> **3. This Court should grant initial hearing en banc to resolve internal disagreement and join its sister circuits in holding that state anti-SLAPP statutes cannot be applied in federal court.**

Many current and former Ninth Circuit judges disagree with

*Newsham*'s conclusion that the anti-SLAPP statute could "exist side by

side" with the Federal Rules of Civil Procedure.  190 F.3d at 971–72

(citation omitted); *see, e.g.*, *Martinez v. ZoomInfo Techs., Inc.*, 82 F.4th

785, 794–96 (9th Cir. 2023) (McKeown, J., concurring), *reh'g en banc

granted, opinion vacated,* 90 F.4th 1042 (9th Cir. 2024); *Planned

Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828,

835–37 (9th Cir. 2018) (Gould, J., concurring); *Makaeff v. Trump Univ.,

LLC*, 736 F.3d 1180, 1188 (9th Cir. 2013) (*Makaeff II*) (Watford, J.,

40

dissenting); *Travelers*, 831 F.3d at 1184 (Kozinski, J., concurring);

*Makaeff I*, 715 F.3d at 275 (Paez, J., concurring); *see also* Lund, *supra*,

at 99 ("[I]n *Newsham* the Ninth Circuit got off on the wrong foot.").

Since *Newsham*, other circuits have weighed in and added their

voices to the chorus that anti-SLAPP statutes are inapplicable in

federal court.[4] *See La Liberte*, 966 F.3d at 87–88 (Second Circuit

concluding California's anti-SLAPP statute does not apply in federal

court); *Abbas*, 783 F.3d at 1336 (D.C. Circuit, per then-Judge

Kavanaugh, concluding same); *see also Carbone*, 910 F.3d at 1357

(holding Georgia's anti-SLAPP statute inapplicable in federal court);

*Intercon Sols., Inc. v. Basel Action Network*, 791 F.3d 729, 732 (7th Cir.

2015) (holding Washington's anti-SLAPP law inapplicable in federal

---

[4]    Numerous district courts have arrived at the same conclusion. *See,
e.g.*, *In re Gawker Media LLC*, 571 B.R. 612, 629–33 (Bankr. S.D.N.Y.
2017) (holding California's anti-SLAPP statute inapplicable in federal
bankruptcy court); *Unity Healthcare, Inc. v. County of Hennepin*, 308
F.R.D. 537, 542 (D. Minn. 2015) (holding Minnesota's anti-SLAPP
statute inapplicable in federal court); *LaNasa v. Stiene*, 731 F.Supp.3d
403, 416–17 (E.D.N.Y. 2024) (holding New York's anti-SLAPP law
inapplicable in federal court); *In re Johnson & Johnson Talcum Powder
Prods. Mktg., Sales Practices, & Prods. Liab. Litig.*, 553 F.Supp.3d 211,
220 n.4 (D.N.J. 2021) (holding District of Columbia's anti-SLAPP
statute inapplicable in federal court); *Parker v. Spotify USA, Inc.*, 569
F.Supp.3d 519, 539 (W.D. Tex. 2021) (holding Texas's anti-SLAPP
statute inapplicable in federal court).

court); *Klocke v. Watson*, 936 F.3d 240, 245–46 (5th Cir. 2019) (holding Texas's anti-SLAPP statute inapplicable in federal court); *Los Lobos Renewable Power, LLC v. Americulture, Inc*, 885 F.3d 659, 668–69 (10th Cir. 2018) (holding New Mexico's anti-SLAPP statute inapplicable in federal court).[5]

In short, the tide is turning against state anti-SLAPP statutes' applicability in federal court.  If the en banc Court does not do so in *Gopher Media LLC v. Melone*, No. 24-2626, this Court should grant initial hearing en banc in this case and join that chorus.

---

[5]   *See also* Yando Peralta, *State Anti-SLAPPs and Erie: Murky, but Not Chilling*, 26 Fordham Intell. Prop. Media & Ent. L.J. 769, 792–96 (2016) (arguing against applying anti-SLAPP laws in federal court).

42

# CONCLUSION

For these reasons, this Court should reverse the district court's order awarding anti-SLAPP attorney's fees to the non-LAUSD Defendants.

August 11, 2025              **HORVITZ & LEVY LLP**
                              JEREMY B. ROSEN
                              JOHN F. QUERIO
                              REBECCA A. MARCYES
                              **THE DEBORAH PROJECT**
                              LORI LOWENTHAL MARCUS
                              JEROME M. MARCUS
                              **JUDICIAL WATCH, INC.**
                              ROBERT PATRICK STICHT


                                       s/ Jeremy B. Rosen
                              _____

                              Attorneys for Plaintiffs and Appellants
                              **CONCERNED JEWISH PARENTS AND
                              TEACHERS OF LOS ANGELES,
                              DANIEL ELI, LINDSEY KOHN, AMY
                              LESERMAN, AND DANNA ROSENTHAL**

43

## STATEMENT OF RELATED CASES

Pursuant to 9th Cir. R. 28-2.6, appellants disclose a related and ongoing matter in this Court, *Concerned Jewish Parents and Teachers of Los Angeles, et al. v. Liberated Ethnic Studies Model Curriculum Consortium, et al.*, Case No. 24-7676, an appeal from the judgment entered November 30, 2024.

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** | 25-3436

I am the attorney or self-represented party.

**This brief contains** | 7,942 | **words,** including | | words

manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

☒ complies with the word limit of Cir. R. 32-1.

☐ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

☐ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

☐ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

☐ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
   ☐ it is a joint brief submitted by separately represented parties.
   ☐ a party or parties are filing a single brief in response to multiple briefs.
   ☐ a party or parties are filing a single brief in response to a longer joint brief.

   ☐ complies with the length limit designated by court order dated

   ☐ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ Jeremy B. Rosen | **Date** | August 8, 2025
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                                          *Rev. 12/01/22*